■ In the Matter of the Estate of FRANCIS R. MILLER, Deceased. AVIS DU B. MILLER, Appellant; NATIONAL BANK AND TRUST COMPANY OF NORWICH, as Executor of FRANCIS R. MILLER, Deceased, et al., Respondents. — Appeal from a decree of the Surrogate's Court of Delaware County (Farley, S.), entered December 28, 1982, which ruled, *inter alia*, that petitioner was not entitled to take an elective share against the estate of her deceased husband by virtue of

the provisions of an antenuptial agreement. On December 18, 1978, two weeks before their marriage, petitioner and the decedent entered into a signed and notarized antenuptial agreement whereby both parties agreed to waive their rights to elect against the estate of the other. This was a second marriage for both, the decedent having two children from his previous marriage, an adult daughter and a minor son afflicted with a serious heart condition. The decedent died on May 6, 1982. His will named his two children as his sole beneficiaries. Petitioner subsequently filed a notice of election against the estate. She contended that the antenuptial agreement was an invalid waiver of her right of election since it was the product of either mutual mistake or fraud. Following a hearing, the Surrogate's Court determined that the agreement was valid and that petitioner was not entitled to elect against the estate. This appeal ensued. A duly executed antenuptial agreement is to be accorded the presumption of legality given to any contract and is presumed to be valid in the absence of proof of fraud (*Matter of Sunshine,* 51 AD2d 326, 327, affd 40 NY2d 875). Petitioner has failed to meet her burden of proving fraud here. She testified that she read the agreement when it was submitted to her by the decedent, and that although she was distressed by its terms, she voluntarily signed it. She does not contend that the decedent was guilty of any deception or overreaching at any time in the course of the preparation and signing of the agreement. Accordingly, there is no basis for disturbing the Surrogate's factual determination that fraud did not exist (see *Matter of Shapiro,* 34 AD2d 1064, mot for lv to app den 28 NY2d 482). There is also no merit to petitioner's claim that the agreement was the product of mutual mistake. She alleges that at the time they executed the agreement, both she and the decedent were under the misapprehension that it would be in effect for only one year. However, there is no proof in the record that the decedent was so mistaken. The agreement, which states that it contains the "entire understanding of the parties", was drawn up at the decedent's request by his attorney. It was sent to the decedent for his review well over two weeks before the wedding, giving him ample time to return it for revision if it did not meet with his approval. The decedent's ratification of the agreement was impliedly repeated in the years which followed its execution in that he did not attempt to rescind the agreement, nor did he provide for petitioner in his will. It seems clear that the decedent's continuing intent was to provide for his children, especially his infirm son, albeit at petitioner's expense. Petitioner's other arguments are similarly unavailing. She contends that the Surrogate erred in ruling that section 15-301 of the General Obligations Law precluded any oral termination of the agreement. However, since petitioner clearly denied at the hearing the existence of any discussions with the decedent concerning the agreement subsequent to its execution, let alone concerning any oral modifications thereof, she cannot now complain about the court's erroneous ruling applying section 15-301 which pertains only to the exclusion of oral modifications. Petitioner's final contention is that the court erred in excluding her testimony concerning the circumstances under which the agreement was signed based on CPLR 4519, the dead man's statute. This rule prevents any person "interested in the event" at issue from testifying to a "personal transaction" with the deceased (*Matter of Wood,* 52 NY2d 139, 144). However, the estate's representative waives the statute's protection if he, *inter alia,* elicits from an interested party testimony as to the personal transaction in issue (*id.,* at p 145). Petitioner contends that the protection of the statute was waived at the hearing when the attorney representing the estate asked her if she signed the antenuptial agreement. She argues that once this question was asked, she was free to testify about her discussions with the decedent concerning the fact that the agreement would only be in effect for one year. This contention lacks merit in

that the questions asked petitioner on cross-examination were pertinent to disprove her claim of fraud, i.e., they elicited testimony as to whether her execution of the agreement was voluntary. However, this cross-examination did not waive the protection of the dead man's statute in regard to testimony concerning the separate issue of whether there existed an oral agreement between petitioner and the decedent concerning the duration of the contract. Even if the court was in error in its application of the dead man's statute, petitioner's attempt to testify about a prior oral agreement was properly excluded under the parol evidence rule which holds that absent fraud or mutual mistake, once an agreement has been reduced to an unambiguous writing, evidence of prior or contemporaneous oral agreements which are offered to contradict or vary the writing must be excluded (*Marine Midland Bank-Southern v Thurlow*, 53 NY2d 381, 387). This is especially true where, as here, the written agreement contains an integration clause which specifically states that the agreement embodies the "entire understanding of the parties" (see *Sabo v Delman,* 3 NY2d 155, 161). Decree affirmed, without costs. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.